UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

LAURIE KUTA,

       Plaintiff(s),

                                    Case No. 05-72927

v.

GENERAL MOTORS CORP.,

                                  Honorable Nancy G. Edmunds

       Defendant(s).

_____/

**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Pending before this Court is Defendant General Motors' ("GM's") motion for summary judgment, filed on June 15, 2006.  Plaintiff Laurie Kuta brought suit against Defendant alleging unlawful gender discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq. ("Title VII"), and Michigan's Elliott-Larsen Civil Rights Act, M.C.L. § 37.2101, et seq. ("ELCRA").  Defendants argue that (1) Plaintiff has not made a prima facie case of gender discrimination because she has not shown that she was treated differently from a similarly situated male worker, (2) the alleged time fraud gave Defendant a legitimate, non-discriminatory reason for terminating Plaintiff's employment, (3) Plaintiff has not shown a sufficient causal connection between her 2002 complaint of gender discrimination and either (i) the ongoing treatment by Plaintiff's managers during her employment, or (ii) Defendant's 2004 termination decision, to have a valid claim for retaliation, (4) Plaintiff has not demonstrated that Defendant's justification was pretextual, and (5) the ELCRA's statute of limitations bars consideration of any events

1

occurring more than three years before the case was filed.

In response, Plaintiff asserts that (1) she has plead sufficient facts for a prima facie case of gender discrimination and retaliation, (2) she has plead sufficient facts to show that Defendant's legitimate non-discriminatory reason for her termination was pretextual, and (3) the ELCRA's statue of limitations does not bar Plaintiff from raising events occurring more than three years prior to her filing suit as evidence of Defendant's unlawful discrimination or retaliation.

For the reasons set forth below, the Court GRANTS Defendant General Motors Corporation's motion for summary judgment and this case is DISMISSED.

## I. FACTS

Defendant employed Plaintiff Laurie Kuta as a salaried Senior Project Engineer in its Powertrain Group from March 31, 2000 until June 26, 2004. (Compl. ¶¶ 10, 19, 69; Def.'s Mot. for Summ. J. at 1.) Plaintiff's specific area of assignment was the Fuels Group, (Compl. ¶ 21.) and her direct manager for most of this time was Coleman Jones. Jones then reported to Dennis Meyers. (Compl. ¶ 26.) Another senior member of the Fuels Group was Group Leader Bob Furey, although he never had any supervisory authority over other group members. (Compl. ¶ 38; Furey Dep. at 73; Kuta Dep. at 182.) Defendant's salaried employees are required to work 8 1/2 hours per day with 30 minutes for lunch, for a total of 40 hours per week. (Def.'s Mot. at 3.) In order to work from home on a regular basis during normal business hours, Defendant's employees must have a formal agreement with their supervisor. Plaintiff does not dispute that she did not have the requisite agreement with Jones or Meyers.

In April 2002, Plaintiff filed an internal complaint of gender discrimination against

2

Jones and Meyers with Elizabeth Bezal of Defendant's human resources ("HR") department.  (Compl. ¶ 28; Def.'s Mot. at 5.)  Plaintiff claimed that Jones and Meyers were less friendly to her compared to male colleagues in the group, criticized her publicly while criticizing males in private, assigned her clerical duties for the group, excluded her from meetings, interfered with her attempts to transfer out of the Fuels Group while allowing male colleagues to transfer, and consistently sided with others in disputes.  (Compl. ¶ 27.)  Following an investigation, Bezal determined that Plaintiff's complaint was without merit.  (Compl. ¶ 32; Def.'s Mot at 5.)

        Plaintiff reported to Jones and Meyers until the fall of 2003, and she alleges that their behavior towards her continued throughout this time.  (Compl. ¶ 40.)  In September 2003, Jones moved into a new position and was no longer Plaintiff's supervisor.  His position as manager of the Fuels Group remained unfilled until May 1, 2004 when Steve Kemp was hired to fill the opening.  (Compl. ¶¶ 43, 49; Def.'s Mot. at 7.)  During the vacancy, group members reported to Furey regarding the status of various projects, (Compl. ¶ 46.) but Furey was a contract worker and had no formal managerial or supervisory authority to allow employees to work from home.  (Def.'s Resp. at 1; Furey Dep. at 73, Ex. 19 to Def.'s Mot.)

    At the start of his tenure, Kemp held introductory meetings with all Fuel Group employees, including Plaintiff, to get up to speed on each engineer's projects and activities.  Plaintiff alleges that Kemp told her at this meeting that Jones and Meyers spent two hours informing Kemp of Plaintiff's history and the prior gender discrimination claim along with warning Kemp that Plaintiff was a difficult employee.  (Compl. ¶ 51.)  Kemp states that he did not know of Plaintiff's prior complaint until early June 2004, as

3

Jones and Meyers did not inform him of any specific problems with Plaintiff when Kemp took over the manager's position. (Def.'s Mot. at 8; Kemp Dep. at 29-30, Ex. 2 to Def.'s Mot.; Jones Aff. at 5, Ex. 2 to Def.'s Mot.; Meyers Aff. at 4, Ex. 3 to Def.'s Mot.)   Kemp claims he only learned of the discrimination complaint through Defendant's HR department during the subsequent investigation of Plaintiff's time records.  (Kemp Dep. at 53.)  He does state that he heard rumors from Furey and another engineer in the group that Plaintiff took long lunches, however.  (Kemp Dep. at 30-31.)

On May 27, 2004, Kemp noticed that Plaintiff was not at her desk at 2:20 p.m. and questioned her the next day on where she was at the time.  (Def.'s Mot. at 1.)  Plaintiff responded that she left early at 3:00 p.m. for a 3:30 doctor's appointment, but that she made up the time by working from home on a report for Furey the prior evening.  (Def.'s Mot. at 1, Ex. 14.)  Kemp was suspicious, and contacted Christine Western in Defendant's HR department about the issue and to have Plaintiff's time swipe records[1] pulled for the month of May 2004 at her assigned work location in Pontiac.  (Def's Mot. at 9.)  Since these records showed that Plaintiff only worked a full 8 hour day on three occasions during the month, Defendant pulled Plaintiff's records for January to April 2004, and these records allegedly confirmed that Plaintiff consistently worked less than a full day.  (Def.'s Mot. at 9.)

On June 22, 2004 Kemp and Western met with Plaintiff to confront her with the allegations of time fraud and give her an opportunity to explain where she was during the times she was not at her assigned work location.  Plaintiff claims that Furey

---

[1] These reports show each time that an employee uses their electronic badge to enter or exit a particular one of Defendant's facilities.

4

authorized her to work from home during the time that the Fuels Group was without a

manager, and that she was unable to provide explanations for many days because

Defendant denied access to her email and calendar during the meeting.  (Compl. ¶¶ 64,

66.)  Kemp and Western were unsatisfied with these explanations, so Western reported

the results to Sharon Ridgell, a Senior Consultant responsible for the Powertrain

division that contained the Fuels Group.  Following discussions with two members of

Defendant's HR department, Ridgell made the decision to terminate Plaintiff on June

25, 2004 without any input from Jones, Meyers or Kemp.[2]  (Def.'s Mot. at 10-11.)

Plaintiff contends that Jones and Meyers convinced Kemp that Plaintiff was a troubled

employee, and that this was the reason Kemp scrutinized her so closely and pursued

the issue with HR after he suspected Plaintiff of leaving early.  (Compl. ¶ 83.)

## II.  STANDARD OF REVIEW - MOTION FOR SUMMARY JUDGMENT

Summary judgment is appropriate only when there is "no genuine issue as to any

material fact and the moving party is entitled to judgment as a matter of law."  Fed. R.

Civ. P. 56(c).  The central inquiry is "whether the evidence presents a sufficient

disagreement to require submission to a jury or whether it is so one-sided that one party

must prevail as a matter of law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52

(1986).  Rule 56(c) mandates summary judgment against a party who fails to establish

the existence of an element essential to the party's case and on which that party bears

the burden of proof at trial.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

The moving party bears the initial burden of showing the absence of a genuine

---

[2]Meyers retired from Defendant nearly two months prior to this time.

issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party meets this burden, the non-movant must come forward with specific facts showing that there is a genuine issue for trial. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). In evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970). The non-moving party may not rest upon its mere allegations, however, but rather "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). The mere existence of a scintilla of evidence in support of the non-moving party's position will not suffice. Rather, there must be evidence on which the jury could reasonably find for the non-moving party. *Hopson v. DaimlerChrysler Corp.*, 306 F.3d 427, 432 (6th Cir. 2002).

## III. ANALYSIS

### A. Gender Discrimination Under Title VII and the ELCRA

Claims brought under Title VII of federal civil rights law and Michigan's ELCRA are analyzed according to the same elements and framework. *Humenny v. Genex Corp.*, 390 F.3d 901, 906 (6th Cir. 2004). In order to assert valid Title VII and ELCRA claims, Plaintiff must show that she is: (1) a member of a protected class, (2) subject to an adverse employment action, (3) qualified for the job, and (4) treated less favorably than similarly situated male employees who engaged in the same conduct. *Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp.*, 176 F.3d 921, 928 (6th Cir. 1999); *Hazle v. Ford Motor Co.*, 628 N.W.2d 515, 521 (Mich. 2001). If Plaintiff asserts a prima facie case, the burden shifts to Defendant to articulate a legitimate non-discriminatory reason for the adverse employment action. At that point, the burden shifts back to

6

Plaintiff to show that Defendant's justification is pretextual.  *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).[3]  If a plaintiff is able to show direct evidence of discrimination, however, the *McDonnell Douglas* analysis does not apply and there is no burden to plead a prima facie case because direct evidence is sufficient to defeat a motion for summary judgment.  *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 511 (2002).

### 1.  Plaintiff has not shown any direct evidence of discrimination

"Direct evidence is evidence that proves the existence of a fact without requiring any inferences."  *Rowan v. Lockheed Martin Energy Systems, Inc*. 360 F.3d 544, 548 (6th Cir. 2004).  In *Rowan*, the plaintiffs' "supervisors [allegedly] made statements about the need to lower the average age at the plant in connection with the layoffs and occasionally called them 'old farts.'"  360 F.3d at 547.  The court held that such statements were too general to constitute direct evidence of discrimination, as they were not sufficiently tied to the decision to terminate *these particular plaintiffs* because of their age.  *Id.* at 548.  An example of direct evidence comes from *DeBrow v. Century 21 Great Lakes, Inc.*, 620 N.W.2d 836 (Mich. 2001), where the plaintiff's supervisor told him he was "getting too old for this shit" during a meeting where the plaintiff learned he was fired.  *Id.* at 838.

---

[3]Plaintiff would have the Court conflate the burden shifting analysis and merely analyze whether Defendant's stated justification is pretextual once Defendant gives a non-discriminatory reason for terminating Plaintiff.  The cases Plaintiff cites on this point, however, addressed the issue in the context of a motion for judgment as a matter of law during trial under Rule 50 of the Federal Rules of Civil Procedure.  Since this Court is considering a motion for summary judgment under Rule 56, Plaintiff's cases are inapplicable here.

2:05-cv-72927-NGE-SDP   Doc # 39   Filed 10/16/06   Pg 8 of 22   Pg ID 1780

Plaintiff lists numerous statements from Jones and Meyers that she claims are direct evidence of gender discrimination.  Specifically, that Jones told her she sounds stupid when she speaks, (Kuta Dep. at 130.) that he said "I will see you fired or you will quit long before I will let you out of this group," (*Id.* at 75.) and told her to begin looking for another job outside the company. (Pl.'s Resp., Ex. C.)  She also alleges that Meyers told her she would have to look up the word integrity because she did not know what it meant, (Kuta Dep. at 53.) that she did not know her place, (*Id.* at 54.) and that he told Jill Cummings, a co-worker in the Fuels Group that "[y]ou women in Fuels and Lubricants have never learned your place, especially Laurie, who's been a thorn in my side."  (*Id.* at 254.)

The last of these statements is the sole candidate for direct evidence of gender discrimination, as that is the only one that mentions Plaintiff's gender in the context of the statement. The others may be rude, inappropriate or mean, but do not show gender discrimination without making an inference of some kind.  Meyers' alleged comment to Cummings regarding Plaintiff and the other women in the Fuels Group is inadmissable hearsay, however, which cannot be considered on a motion for summary judgment. *Wiley v. U.S.*, 20 F.3d 222, 226 (6th Cir. 1994).  Plaintiff is correct in arguing that this statement is non-hearsay under Fed. R. Evid. 801(d)(2) as an admission by a party-opponent, but there is still the issue that it was Cummings who told Plaintiff what Meyers said.[4]  There is no exception to cure this second layer of hearsay under the

_____

[4]Furthermore, Cummings denies that Meyers said this to her, (Cummings Dep. at 8, Ex. 10 to Def.'s Mot.) so the only source for the statement is Plaintiff's hearsay testimony.

8

circumstances, so the Court cannot consider that statement as direct evidence of discrimination.  Without any direct evidence, Plantiff must plead a prima facie case under the *McDonnell Douglas* framework to defeat Defendant's motion for summary judgment.

### 2.  Plaintiff has not plead a prima facie case of gender discrimination

Defendant does not dispute that Plaintiff has alleged the first three elements of a prima facie case, but argues that she has not shown that Defendant treated a similarly situated male employee in the Fuels Group differently. (Def.'s Mot. at 14.) Plaintiff's evidence of gender discrimination consists of the following: she was not invited to numerous meetings even though she was the best candidate to participate, she was told a transfer out of the Fuels Group was not possible because there was a hold on all transfers, yet at least three men were allowed to transfer out of the group, and male employees in the Fuels Group were allowed to complete work at home in the evenings when they left the office early.

Plaintiff's deposition testimony regarding the meetings consists of conclusory statements that she should have been the one invited to participate rather than other employees in the group.  (Kuta Dep. at 68-70.)  Nowhere in her testimony does she point to evidence that the others were selected to participate instead of Plaintiff as a result that they were male, nor does she put forth evidence, beyond her own statements, that she was similarly situated to those who attended the meetings.  On both grounds, this allegation does not rise to the level of gender discrimination prohibited under Title VII.

Similarly, Plaintiff's evidence of her thwarted attempts to transfer out of the Fuels

9

Group is lacking.  She asserts that two members of the group were allowed to transfer

out within a year of her request that Jones permit her to transfer to a calibration group.

(Kuta Dep. at 77.)  One of these individuals was Jones himself, who, as a manager, is

not similarly situated to Plaintiff. The other was Rubin Sarcar, but Plaintiff provides no

information to show what position Sarcar held, or that they were similarly situated either.

Furthermore, Plaintiff's later deposition testimony indicates that Cummings, Bill

Studzinski and Jeff Knight all wanted to transfer out of the Fuels Group, (Kuta Dep. at

78-79.) but has no evidence that any of them were actually allowed to move during this

time.  None of this serves to discredit Plaintiff's own admission that Bezel from

Defendant's HR department told Plaintiff that all transfers were "on hold" at this time.

(Kuta Dep. at 77.)  Jones may have refused to allow Plaintiff to transfer from the group,

but without evidence that he did allow a similarly situated male employee to transfer,

Plaintiff has no evidence of gender discrimination on these grounds.

    Lastly, there is no evidence to support Plaintiff's assertion that other male

employees in the group were allowed to work from home in order to make up time when

they were not in the office during the regular work day.  Furey's deposition testimony

refers to the fact that other Fuels Group employees worked outside of the office, but the

section Plaintiff cites only discusses situations when these individuals were at other GM

locations for work-related projects, not that they left early to work at home.  (Furey Dep.

at 35-38.)  Robert Stockwell, another Fuels Group engineer, stated at his deposition that

he does not recall leaving early during the day and taking work home to make up the

time.  (Stockwell Dep. at 12.)  Also, Sid Clark is a long term employee who takes

vacation time whenever he is out of the office on many Fridays, and Greg Campau had

a formal agreement in place to work from home, so neither of these employees is similarly situated to Plaintiff.  (Def.'s Mot. at 17.)  This evidence does not support Plaintiff's assertion, let alone indicate any form of gender discrimination.  Therefore, Plaintiff's claims under Title VII and the ELCRA fail as a matter of law and must be dismissed.

### 3.  Even if Plaintiff plead a prima facie case of discrimination, she has not shown that Defendant's legitimate justification was pretextual

Assuming that Plaintiff had plead a prima facie case of gender discrimination, Defendant's legitimate justification for her termination as a result of time fraud shifts the burden back to Plaintiff to show that Defendant's reason is pretextual.  In order to survive Defendant's motion for summary judgment, Plaintiff is required to show by a preponderance of the evidence either "(1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate [her] discharge, or (3) that they were insufficient to motivate discharge."  *Manzer v. Diamond Shamrock Chems. Co.* 29 F.3d 1078, 1084 (6th Cir. 1994) (citing *McNabola v. Chicago Transit Authority*, 10 F.3d 501, 513 (7th Cir.1993)).  Plaintiff challenges the instant termination on the first and second grounds.

Plaintiff's first argument is without merit, as the time swipe records gave Defendant ample reason to terminate Plaintiff for time fraud, especially with the limited number of times that she actually worked a full eight-hour day at the Pontiac location between January and May 2004.  There might be sufficient doubt if Plaintiff stated that she regularly worked at other locations, but her own deposition testimony indicated that such off-site meetings were relatively infrequent.

11

As for the second ground resting on a lack of actual motivation for the discharge,

Defendant argues that the proper focus is on the employer's subjective honesty

surrounding the adverse employment action, and not the reasonableness of the

investigation leading to the end result.  *Comiskey v. Automotive Industry Action Group*,

40 F.Supp. 2d 877, 896 (E.D. Mich. 1999) (citing *Kariotis v. Navistar Int'l Trans. Corp.,*

131 F.3d 672, 677 (7th Cir. 1997)).  In *Smith v. Chrysler Corp.*, 155, F.3d 799, 806-07

(6th Cir. 1998), however, the Sixth Circuit rejected the Seventh Circuit's "honest belief"

rule as described in *Kariotis*, holding that review of the defendant's investigation is

proper.  The appropriate scope of this review is as follows:

> In deciding whether an employer reasonably relied on the particularized
> facts then before it, we do not require that the decisional process used by
> the employer be optimal or that it left no stone unturned. Rather, *the key
> inquiry is whether the employer made a reasonably informed and
> considered decision* before taking an adverse employment action.

155 F.3d at 807 (emphasis added).  See also *Wexler v. White's Fine Furniture*, 317
F.3d 564, 576 (6th Cir. 2003); and *In re Lewis (Lewis v. Sears, Roebuck & Co.)*, 845
F.2d 624, 633 (6th Cir. 1988).

Therefore, the Court must investigate Defendant's process that resulted in Plaintiff's

termination to assess whether Defendant's asserted justification is pretextual.

Plaintiff points to a number of facts to support her claim that the investigation was

conducted with the purpose of finding a reason to terminate her, rather than to uncover

whether she was actually committing time fraud.  These include: (1) Defendant did not

check the swipe records of other facilities where Plaintiff had to go for work purposes,

(2) one of Defendant's HR employees testified that there would not be sufficient cause

to terminate Plaintiff for time fraud without obtaining swipe records from those other

facilities, (3) Defendant did not allow Plaintiff access to her calendar or email during the

12

meeting where she was confronted with the allegations of time fraud, (4) Defendant did not follow its progressive disciplinary procedures and immediately terminated Plaintiff, (5) Plaintiff never had any prior disciplinary issues, (6) Jones and Meyers met with Kemp to tell him about the past problems they had with Plaintiff, and (7) HR employee Western told Ridgell of Plaintiff's 2002 complaint prior to Ridgell's decision to terminate Plaintiff.

Defendant initiated the investigation of Plaintiff's time records after Kemp suspected that she was not being truthful regarding the time she left the office one day. This, coupled with the rumors Kemp had heard from Furey and another engineer in the Fuels Group about Plaintiff taking long lunches is what caused him to ask HR to pull Plaintiff's time records for May. Based upon the fact that Plaintiff only showed three full days of work for the month, HR pulled the rest of her records going back to January. After reviewing these records, the decision was made to confront Plaintiff with the time fraud allegations and give her a chance to explain the absences. In terms of the process, this Court finds that it was conducted reasonably under the circumstances. Defendant could have done a more thorough investigation by searching the records for other facilities, but the Sixth Circuit has specifically held that the procedure does not have to "be optimal or [leave] no stone unturned." *Smith*, 155 F.3d at 807.

Plaintiff also relies on the deposition testimony of Robert Krause, one of Defendant's high-level HR employees who Ridgell consulted before making the decision to terminate Plaintiff. Krause stated that Defendant requires proof "without a reasonable doubt" in order to terminate an employee for time fraud. (Krause Dep. at 48.) In response to hypothetical questions designed to mirror Plaintiff's situation, Krause's

13

deposition testimony alludes to the fact that a reasonable doubt would still exist in a case where an employee *regularly* worked at numerous facilities and HR did not pull time records from all the facilities where the employee worked.  (Krause Dep. at 49-55.) Here, however, Plaintiff stated that the meetings she attended at other facilities typically occurred monthly, so it is a stretch to call her travels regular under these circumstances. Since Krause's testimony does not indicate that GM would always pull time records for every facility that an employee might work at during a time fraud investigation, Plaintiff's argument fails to show that the investigation was unreasonable in this particular situation.

Although Defendants dispute that Plaintiff was denied access to her email and calendar during the June 22, 2004 meeting, the Court must take Plaintiff's assertion that she was not given an opportunity to access these items as fact for purposes of this motion.  It would have been better if Defendant had afforded her this opportunity, but this deficiency is not fatal, since Plaintiff's records showed a continuous history of not working a full day.  This is not a case where Defendant attempted to seize upon a technicality where an employee left early on one or two instances in the hopes that the employee would not be able to account for the time and this would give the employer grounds for termination.  Nor is it one where Plaintiff was constantly out of the office for GM meetings, as Plaintiff herself admits that most of the meetings she attended outside of Pontiac were held monthly and she did not attend all of these meetings. (Kuta Dep. at 214-17.)  Western also reported that Plaintiff told her she attended meetings outside Pontiac infrequently. (Western Dep. Vol. 1 at 51, 108; Vol. 2 at 15.)  In light of the fact that Plaintiff only worked outside the Pontiac location on an infrequent basis, it was not

14

unreasonable to pull only the Pontiac time swipe records.

Next, Plaintiff asserts that her conduct in this case did not warrant immediate termination, and she should have first been offered some intermediate level of corrective action, such as a performance intervention or performance improvement plan. Specifically, Plaintiff points to Western's testimony that these are available alternatives of HR action along with suspension and termination. (Western Dep., Vol. 2 at 75-81.) Nowhere, however, does Plaintiff indicate that Defendant's policies require these intermediate steps to be taken before moving on to more severe actions, nor does she indicate that Defendant applied such methods with other employees accused of time fraud instead of terminating the individual once Defendant found fraud. Similarly, Plaintiff has not shown that any employees who committed time fraud, but had no prior disciplinary issues, were not terminated.

Plaintiff's sole attempt at comparing herself to another employee that received a performance intervention fails for a lack of commonality between the two situations. The employee at issue was placed on performance intervention for a number of performance-related issues, including sub-par performance, wandering away from his assigned work station, sleeping on the job, threatening comments and poor attendance. The attendance issues consisted of not showing up for work, taking unannounced vacation days, and frequently leaving work early by claiming he was sick. (Def.'s Reply, Ex. 6.) According to Western's deposition testimony, performance interventions and performance improvement plans are designed to address performance issues, which can include attendance problems, but do not necessarily cover the degree of conduct involved in this case. (Western Dep. at 77-80.) As Plaintiff's proffered similarly situated

employee was not accused of time fraud, and she has not shown that other employees accused of time fraud were given performance interventions prior to termination, this does not provide an adequate ground to show that Defendant's response was pretextual.

Lastly, Plaintiff's allegations of conversations between the various individuals involved in this case do not show that an organized plan was created to use time fraud as pretext for terminating Plaintiff because of her gender.  Taking Plaintiff's evidence of the conversation between Jones, Meyers and Kemp as true still does not provide evidence of any further connection between Kemp, Western and Rigdell.  Since Rigdell was the actual decision-maker here, Plaintiff must bring some evidence, beyond the fact that Ridgell was aware of Plaintiff's past discrimination complaint, to support this connection in order to have a valid claim that Defendant's reason was pretext.  Without any evidentiary support, this assertion fails as well.

It is important to mention that Plaintiff raises issues regarding inconsistent deposition testimony by Kemp and Western regarding when each of them knew of Plaintiff's 2002 gender discrimination complaint.  (Pl.'s Resp. at 6.)  "In appropriate circumstances, the trier of fact can reasonably infer from the falsity of the explanation that the employer is dissembling to cover up a discriminatory purpose."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 147 (2000).  The Court continued, however, noting that "[t]his is not to say that such a showing by the plaintiff will *always* be adequate to sustain a jury's finding of liability."  *Id.* at 148 (emphasis in original).  The instant case falls in the latter category, as Plaintiff's evidence of potentially inconsistent testimony is virtually the only evidence on point.  Without any additional evidence of

16

discrimination, the possibility of false testimony is not sufficient by itself to show that Defendant's justification is pretextual.

Even if Plaintiff had plead a prima facie case of discrimination, she cannot meet her burden of showing that Defendant's non-discriminatory justification was pretext, and her claims for gender discrimination under Title VII and the ELCRA fail as a matter of law.

### B. Retaliation Under Title VII

In order to plead a valid claim for retaliation under Title VII, Plaintiff must show: "(1) she engaged in [a] protected activity, (2) her exercise of rights was known by the defendant, (3) the defendant took an adverse action against her, and (4) there was a causal connection between the protected activity and the adverse employment action." *Thompson v. Ameritech Advertising Svcs.*, 40 Fed. Appx. 90, 92 (6th Cir. 2002). Defendant admits that the first three elements are met, but challenges Plaintiff's showing of a sufficient causal connection between her 2002 internal gender discrimination complaint and Defendant's unlawful actions against her.  The requisite causal connection is shown if Plaintiff can produce sufficient evidence from which an inference can be drawn that the adverse action would not have been taken had the plaintiff not filed a discrimination action." *Allen v. Michigan Dept. of Corrections*, 165 F.3d 405, 413 (6th Cir. 1999).  "Although no one factor is dispositive in establishing a causal connection, evidence that defendant treated the plaintiff differently from similarly situated employees or that the adverse action was taken shortly after the plaintiff's exercise of protected rights is relevant to causation.  The burden of establishing a *prima facie* case in a retaliation action is not onerous, but one easily met." *Nguyen v. City of*

17

*Cleveland*, 229 F.3d 559, 563 (6ᵗʰ Cir. 2000) (emphasis in original, internal citations omitted).

Plaintiff argues that both the termination and her mistreatment by Jones and Meyers constitute actionable retaliation in this case.

### 1.  Plaintiff lacks the causal connection required for a retaliation claim based upon her termination

As noted previously, Plaintiff's attempted connection between her 2002 complaint against Jones for sexual harassment and Ridgell's decision to terminate her for time fraud fails as a matter of law.  At best, Plaintiff has shown that Kemp knew of her discrimination complaint when he became manager of the Fuels Group through his meeting with Jones and Meyers, and Ridgell, the final decision maker, knew of the complaint at some point during the time fraud investigation.  (Ridgell Dep. at 129-30.) Still, mere knowledge by the final decision maker does not show a causal connection between Plaintiff's complaint and the termination.  Plaintiff brings no evidence that Ridgell terminated her for anything except the alleged time fraud, and the managers that Plaintiff accused of gender discrimination more than two years previous had retired (Meyers) and moved to a new position with GM (Jones).  Stringing a potential chain of conversations and knowledge between Jones, Meyers, Kemp, Western, and Rigdell, without more, is not enough to meet the causal connection requirement for a retaliation claim based upon Plaintiff's termination, especially given the length of time between Plaintiff's original complaint and her termination.

### 2.  Plaintiff lacks the causal connection required for a retaliation claim based upon Jones and Meyers' actions towards her while employed with Defendant

18

Both the Sixth Circuit and Michigan Supreme Court have held that retaliatory harassment can satisfy the adverse employment action required to have a valid retaliation claim under Title VII and the ELCRA. *Morris v. Oldham County Fiscal Court*, 201 F.3d 784, 791 (6th Cir. 2000); and *Meyer v. City of Center Line*, 619 N.W.2d 182, 189 (Mich. 2000). Both courts required severe or pervasive harassment in order to state a valid claim on these grounds. *Morris*, 201 F.3d at 792; *Meyer*, 619 N.W.2d at 189. Requiring a high bar to find harassment is consistent with other court cases that have determined that an adverse employment action must be a "materially adverse change in the terms and conditions of employment." *Smith v. City of Salem*, 378 F.3d 566, 575 (6th Cir. 2004) (quoting *Hollins v. Atlantic Co.*, 188 F.3d 652, 662 (6th Cir. 1999)). "Examples of adverse employment actions include firing, failing to promote, reassignment with significantly different responsibilities, a material loss of benefits, suspensions, and other indices unique to a particular situation." *Id.* at 575-76 (citing *Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742, 761, (1998)). "A bruised ego, mere inconvenience or an alteration of job responsibilities is not enough to constitute an adverse employment action." *Id.* (citing *White v. Burlington Northern & Santa Fe R.R.*, 364 F.3d 789, 797 (6th Cir. 2004)).

Plaintiff's claim for retaliatory harassment fails on two grounds. First of all, this Court is not convinced that she suffered severe levels of harassment at the hands of Jones and Meyers. A manager's rude comments, failure to invite an employee to meetings, constantly watching over an employee's behavior, and refusing to allow an employee to transfer out of the group do not suffice. Secondly, Plaintiff does not allege

19

that Jones and Meyers' behavior towards her worsened following the gender

discrimination complaint she filed in 2002.  Without any evidence of an increase in

severity of Jones and Meyers' treatment of Plaintiff following her complaint, there is no

evidence that their behavior changed in response to her complaint, and she does not

have a claim of retaliation under Title VII on these grounds.

### C.  Retaliation under the ELCRA

Defendants argue that the causal connection required to have a valid claim of

retaliation under the ELCRA is higher than that required for Title VII under federal law,

in that Michigan law requires that the protected activity be a "significant factor" in the

adverse employment action rather than a mere cause of the action.  *Booker v. Brown &*

*Williamson Tobacco Co, Inc.*, 879 F.3d 1304, 1310 (6th Cir. 1989); *Barrett v. Kirkland*

*Comm. College*, 628 N.W.2d 63, 75 (Mich. Ct. App. 2001).  Plaintiff argues that this is

no longer a requirement in Michigan following the Michigan Supreme Court's decision in

*Garg v. Macomb Co. Comm. Mental Health Servs.*, 696 N.W.2d 646 (2005).  Since

Plaintiff has not met the causation standard for a Title VII claim, however, this issue is

moot and does not warrant further consideration.[5]

## IV.  CONCLUSION

Being fully advised in the premises, having read the pleadings, and for the reasons

set forth above, the Court hereby orders as follows:

---

[5]Defendants also argue that the statute of limitations under the ELCRA bars the
consideration of evidence of discrimination that occurred more than three years prior to
Plaintiff's filing of this lawsuit.  Since Plaintiff has failed to state a valid claim under the
ELCRA even with the consideration of all her evidence, the Court need not address this
argument.

Defendant's motion for summary judgment is GRANTED and this case is DISMISSED.

SO ORDERED.


s/Nancy G. Edmunds
Nancy G. Edmunds
United States District Judge

Dated:  October 16, 2006

I hereby certify that a copy of the foregoing document was served upon counsel of record on October 16, 2006, by electronic and/or ordinary mail.

s/Carol A. Hemeyer

Case Manager